**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| AGF MANUFACTURING, INC., <br><br> Plaintiff, <br><br> v. <br><br> CORE & MAIN LP, <br><br> Defendant. | No. 25-cv-1275 <br><br><br> **OPINION & ORDER** |

**CECCHI, District Judge.**

Before the Court is defendant Core & Main LP's ("Core & Main") motion to dismiss Counts II, III, and IV of plaintiff AGF Manufacturing, Inc.'s ("AGF") amended complaint (the "Amended Complaint") pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF No. 67; *see also* ECF No. 67-1 ("Moving Br."); ECF No. 55 ("Am. Compl."). AGF opposed the motion, ECF No. 78 ("Opp'n Br."), and Core & Main replied, ECF No. 83 ("Reply Br."). The Court decides the motion without oral argument. Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b). For the reasons stated below, the Court will grant Core & Main's motion to dismiss.

**I.     BACKGROUND**

    **A.     AGF's Allegations**[1]

AGF is a Pennsylvania corporation that manufactures products for fire sprinkler systems. Am. Compl. ¶¶ 2, 14. Core & Main "is a limited partnership organized under" Florida law with its principal place of business in Missouri that similarly sells fire sprinkler system products,

---

[1] For purposes of this motion to dismiss, the Court accepts the Amended Complaint's well-pled factual allegations as true, construes them in the light most favorable to AGF, and draws all reasonable inferences in AGF's favor. *See Lutz v. Portfolio Recovery Assocs., LLC*, 49 F.4th 323, 328 (3d Cir. 2022).

including through a "distribution center" in Westville, New Jersey. *Id.* ¶¶ 3, 7. This mater arises out of Core & Main's importation, marketing, manufacture, and sale of the "Automatic Air Vent w/ Adjustable Purge Valve Model LVAV-2" product (the "LVAV-2")—a product that AGF alleges infringes on its "PURGENVENT Model 7900 Automatic Air Vent (AAV)" (the "Model 7900 AAV"). *Id.* ¶¶ 1, 19, 32.

In 2017, AGF began manufacturing and selling the Model 7900 AAV, which is an "[a]utomatic [a]ir [v]enting [v]alve" used in fire sprinkler systems. *Id.* ¶¶ 21, 23; ECF No. 55-2 at 2. On August 27, 2019, AGF received U.S. Patent No. 10,391,344 (the "'344 Patent"), which the Model 7900 AAV "embodies." Am. Compl. ¶¶ 15, 20. As pictured below, the Model 7900 AAV is generally bronze or brass in color with "red handled valves" and a conical-shaped air vent. *Id.* ¶¶ 19, 26; *see* ECF No. 55-2 at 2–3.



**Model 7900 AAV**

The Model 7900 AAV "is in accordance with" the National Fire Protection Association's "industry benchmark for design and installation of automatic fire sprinkler systems," because it uses "metallic pipe to help mitigate internal pipe corrosion due to trapped air." Am. Compl. ¶ 22.

2

The Model 7900 AAV also has several advantages relative to "other fire sprinkler air vent products on the market." *Id.* ¶ 47. Unlike "other fire sprinkler air vent products," the Model 7900 AAV does not use a "Spirotop air vent," a type of vent that "has a reputation of leaking." *Id.* ¶¶ 47–48. Moreover, the Model 7900 AAV's "[c]onical[-]shape[d] [air vent] maximizes clearance and protects . . . venting valves from contamination." ECF No. 55-2 at 2.

Given the Model 7900 AAV's advantages and the company's other products, AGF asserts that it has a "reputation of providing high quality and reliable products." Am. Compl. ¶ 49. Additionally, the Model 7900 AAV "is well recognized in the minds of contractors and engineers in the fire sprinkler industry, distributors of fire sprinkler products, and others in the fire sprinkler industry." *Id.* ¶ 76.

AGF "does not sell the Model 7900 AAV directly to the public." *Id.* ¶ 28. Instead, AGF "sells it[] . . . to distributors who then sell [it] to third parties, such as subcontractors" "who are acquiring the product for installation and maintenance purposes of wet pipe fire sprinkler systems." *Id*. ¶¶ 23, 28. AGF sells the Model 7900 AAV to three main distributors, one of which is Core & Main. *Id.* ¶ 29.

However, Core & Main is not just a distributor of fire sprinkler system products like AGF's Model 7900 AAV. Core & Main also imports, markets, manufactures, and sells its own fire sprinkler system products, including the LVAV-2. *See id.* ¶¶ 32–35. The LVAV-2, like AGF's Model 7900 AAV, is a fire sprinkler air vent product that consists of a one inch "ball valve, an air vent, [a] strainer, and [a] purge valve." *Id.* ¶¶ 24, 32; ECF No. 55-3 at 2–3. However, unlike the Model 7900 AAV, the LVAV-2 "uses a copy of the Spirotop air vent," which AGF alleges has a reputation of leaking. Am. Compl. ¶¶ 47, 49. Core & Main has sold the LVAV-2, which directly

3

competes with the Model 7900 AAV, under its Lansdale[2] brand since January 2025.  *Id.* ¶¶ 36–37, 84.  The following is a photo of the LVAV-2, followed by a comparison of the Model 7900 AAV (on the left) and the LVAV-2 (on the right).  *See id.* ¶¶ 33, 43.





---

[2] Core & Main owns, does business, and maintains websites under the names "Brecco Distribution Corporation, Lansdale International, LLC, and Lansdale Valve & Manufacturing Corporation." Am. Compl. ¶¶ 4–5; *see also id.* ¶¶ 35–36; ECF No. 55-3 at 2–3.

AGF's Amended Complaint centers on two types of alleged conduct. First, AGF alleges that the LVAV-2 infringes on its '344 Patent. *Id.* ¶¶ 57–64. Second, AGF alleges that the LVAV-2 infringes on the Model 7900 AAV's trade dress under the Lanham Act, and constitutes unfair competition under both the Lanham Act and Pennsylvania common law. *Id.* ¶¶ 65–86. Core & Main seeks dismissal only of the trade dress and unfair competition claims. ECF No. 67 at 1. With respect to those claims, AGF's Amended Complaint focuses on what it contends are similarities between the two models, including their "unique configuration" and "overall look and feel," "including the shape and size of the product[s], the shaping of [their] individual parts, the coloring of the[ir] parts, and [their] red handled valves." Am. Compl. ¶¶ 67–68. AGF contends that these alleged similarities have "caused actual confusion, including a communication indicating a belief that Core & Main's LVAV-2 was AGF's Model 7900 AAV, when it was not." *Id.* ¶ 42; *see also id.* ¶ 69.

### B. Procedural History

AGF filed its initial complaint on February 14, 2025. ECF No. 1. In that complaint, AGF named the following defendants: Core & Main, Brecco Corporation, Brecco Distribution Corp., Lansdale International LLC, and Lansdale Valve & Manufacturing. *Id.* at 1. Thereafter, by stipulation of voluntary dismissal, AGF dismissed Brecco Corporation, Brecco Distribution Corp., Lansdale International LLC, and Lansdale Valve & Manufacturing—leaving Core & Main as the sole defendant. *See* ECF No. 34 at 1–2 ("[I]n or around 2019, Defendant Core & Main LP acquired the assets of Brecco Distribution Corporation, Lansdale International, LLC, and Lansdale Valve Manufacturing Corporation."); *see also* Am. Compl. ¶¶ 4–6. After Core & Main filed an initial motion to dismiss, ECF No. 50, AGF filed its Amended Complaint on April 22, 2025, which seeks damages, equitable relief, attorneys' fees, and any other relief "the Court . . . deem[s] just and

proper," Am. Compl. at 20–21. Two weeks later, Core & Main moved to dismiss the Amended Complaint. ECF No. 67; Moving Br.

## II. LEGAL STANDARD

A motion under Rule 12(b)(6) "tests the legal sufficiency of a complaint under [Federal Rule of Civil Procedure 8(a)(2)'s] plausibility pleading standard," *Zanetich v. Wal-Mart Stores E., Inc.*, 123 F.4th 128, 138 (3d Cir. 2024), which requires that a "pleading . . . contain 'a short and plain statement of the claim showing that the pleader is entitled to relief,'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). Accordingly, to survive dismissal under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim [for] relief that is plausible on its face.'" *Id.* at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face if the complaint contains "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of" the misconduct alleged. *Twombly*, 550 U.S. at 556. Moreover, defendants have the burden of showing that a complaint fails to state a plausible claim for relief. *See Bruni v. City of Pittsburgh*, 824 F.3d 353, 361 n.11 (3d Cir. 2016).

The Court conducts a three-step analysis when considering a Rule 12(b)(6) motion. *See Lutz*, 49 F.4th at 327. First, the Court "must 'tak[e] note of the elements a plaintiff must plead to state a claim." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011) (alteration in original) (quoting *Iqbal*, 556 U.S. at 675). Second, the Court will disregard formulaic recitations of a claim's elements; legal conclusions; and speculative, threadbare, or conclusory factual allegations. *See Lutz*, 49 F.4th at 327–28; *see also Santiago v. Warminster Twp.*, 629 F.3d 121, 131 (3d Cir. 2010) ("We . . . disregard 'naked assertions devoid of further factual enhancement' and 'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" (citation

omitted)). Third, as stated above, the Court will assume the truth of the complaint's "remaining allegations," construe "them in the light most favorable to the plaintiff," draw "all reasonable inferences in the plaintiff's favor," and then determine whether plaintiff has "plausibly ple[d] a claim." *Lutz*, 49 F.4th at 328.

### III. DISCUSSION

In the Amended Complaint, AGF asserts four counts: patent infringement under 35 U.S.C. §§ 271, 281–85 (Count I), trade dress infringement under 15 U.S.C. § 1125 (Count II), unfair competition under 15 U.S.C. § 1125 (Count III), and unfair competition under Pennsylvania law (Count IV). Am. Compl. ¶¶ 57–86. Core & Main seeks dismissal of Counts II to IV, *i.e.*, all claims except patent infringement. *See* Moving Br. at 1; ECF No. 67 at 1. For the reasons stated below, the Court will dismiss these claims without prejudice.

#### A. AGF's Trade Dress Infringement Claim

The Lanham Act, 15 U.S.C. § 1051, *et seq.*, creates a federal cause of action for trade dress infringement. *See Buzz Bee Toys, Inc. v. Swimways Corp.*, 20 F. Supp. 3d 483, 496 (D.N.J. 2014). Trade dress is "the total image or overall appearance of a product, and includes, but is not limited to, such features as size, shape, color or color combinations, texture, graphics, or even a particular sales technique." *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 308 (3d Cir. 2014) (quoting *Rose Art Indus. v. Swanson*, 235 F.3d 165, 171 (3d Cir. 2000)). "The purpose of trade dress protection is to 'secure the owner of the trade dress the goodwill of his business and to protect the ability of consumers to distinguish among competing producers.'" *Id.* (quoting *McNeil Nutritionals, LLC v. Heartland Sweeteners, LLC*, 511 F.3d 350, 357 (3d Cir. 2007)); *see also Ezaki Glico Kabushiki Kaisha v. Lotte Int'l Am. Corp.*, 986 F.3d 250, 256 (3d Cir. 2021) ("Trade dress . . . is limited to protecting the owner's goodwill and preventing consumers from being confused about the source of a product.").

7

To state a claim for trade dress infringement, a plaintiff must, as a threshold matter, "articulat[e] the specific elements which comprise its distinct dress." *Fair Wind*, 764 F.3d at 309 (alteration in original) (citation omitted); *see also id.* ("Even before it reaches the question of protectability, however, a district court should scrutinize a plaintiff's description of its trade dress to ensure itself that the plaintiff seeks protection of visual elements of its business."). Then, to establish a claim for infringement of that trade dress, a plaintiff must plead three elements. First, a plaintiff must plead that "the allegedly infringing design is non[-]functional." *Id.* at 309 (quoting *McNeil Nutritionals*, 511 F.3d at 357). Second, a plaintiff must plead that "the design is inherently distinctive or has acquired secondary meaning." *Id.* (quoting *McNeil Nutritionals*, 511 F.3d at 357). And third, a plaintiff must plead that "consumers are likely to confuse the source of the plaintiff's product with that of the defendant's product." *Id.* (quoting *McNeil Nutritionals*, 511 F.3d at 357). Because AGF has failed to plausibly allege that its trade dress is non-functional, the Court finds that AGF has failed to state a trade dress claim.

### 1. Whether AGF Has Adequately Articulated its Trade Dress

AGF identifies its trade dress as the "overall look and feel of the [Model 7900 AAV], including [its] shape and size . . . , the shaping of [its] individual parts, the coloring of the parts, and [its] red handled valves." Opp'n Br. at 6 (quoting Am. Compl. ¶ 26); *see also* Am. Compl. ¶ 67 ("The distinctive design consists of the following features: the unique configuration of the component parts, the overall look and feel of the product, including the shape and size of the product, the shaping of individual parts, the coloring of the parts, and red handled valves."). It also points to the "picture [from the Amendment Complaint] . . . of the Model 7900 AAV that [it argues] demonstrates" its trade dress, as well as the side-by-side comparison of the Model 7900 AAV and the LVAV-2. Opp'n Br. at 6. Core & Main argues that this description is inadequate because it fails to "indicate what, if any, aspects of the shape and size of the product, the shaping

8

of the individual parts, or the coloring of the parts that AGF claims as its trade dress." Reply Br. at 2; Moving Br. at 4–5.

The Court finds that AGF has sufficiently pled the elements of its trade dress. To determine whether a plaintiff has satisfied its "duty to 'articulat[e] the specific elements which comprise its distinct dress," the critical inquiry is whether plaintiff has given defendant "adequate notice of what overall look it wishes to protect." *Fair Wind*, 764 F.3d at 309, 310 (alteration in original) (citation omitted). And in evaluating whether plaintiff has provided adequate notice of what overall look it wishes to protect, the Court must be sure not to allow a plaintiff to assert "trade dress protection 'at an improper level of generality.'" *Happy Prods., Inc. v. Ontel Prods. Corp.*, No. 24-9819, 2025 WL 3171370, at *4 (D.N.J. Nov. 13, 2025) (citation omitted).

AGF has satisfied its duty here, given its identification of the Model 7900 AAV's (1) bronze and brass "color[]," (2) overall shape as well as the shape of its components, including its "[c]onical[-]shape[d]" air vent, (3) size and dimensions, and (4) "red handled valves." Am. Compl. ¶¶ 26, 67; ECF No. 55-2 at 3; *see e.g.*, *Aroma Depot, Inc. v. Plant Guru, Inc.*, No. 22-2281, 2025 WL 1685936, at *1 (D.N.J. June 16, 2025) (citing *E. & J. Gallo Winery v. Three Sixty Five Wines LLC*, No. 24-249, 2024 WL 5252475, at *2 n.7 (D.N.J. Dec. 31, 2024)); *I.M. Wilson, Inc. v. Otvetstvennostyou "Grichko"*, 500 F. Supp. 3d 380, 407–08 (E.D. Pa. 2020); *Truinject Corp. v. Nestle Skin Health, S.A.*, No. 19-592, 2020 WL 70981, at *17 (D. Del. Jan. 7, 2020), *report and recommendation adopted sub nom. Truinject Corp. v. Nestle Skin Health. S.A.*, No. 19-592, 2020 WL 1270916 (D. Del. Mar. 17, 2020); *Kee Action Sports LLC v. Valken Inc.*, No. 12-6069, 2013 WL 6633439, at *7 (D.N.J. Dec. 17, 2013); *see also Weber-Stephen Prods. LLC v. Sears Holding Corp.*, No. 13-1686, 2013 WL 5782433, at *4 (N.D. Ill. Oct. 25, 2013) (finding that plaintiff

9

adequately articulated its alleged trade dress through the "combination" of design descriptions and photographs of the product).

### 2. Whether the Allegedly Infringing Design Is Non-Functional

Core & Main argues that AGF has failed to "plausibly plead that the unregistered trade dress it has identified is non-functional," largely because "the '344 patent [which the Model 7900 AAV embodies] expressly discloses that all elements of AGF's alleged trade dress are functional." Moving Br. at 7, 10. AGF disputes this, stating that (1) "[t]he Model 7900 AAV could have been made of any number of different colored metals and any number of different colored valve handles" and (2) their basic allegations of nonfunctionality are sufficient to survive the motion to dismiss. Opp'n Br. at 7–8 (citing Am. Compl. ¶¶ 25, 75).

The Court finds that, at this stage, AGF has failed to plausibly allege that its trade dress is non-functional. "Trade dress is limited to designs that identify a product's source. It does not safeguard designs that are functional—that is, useful."[3] *Ezaki*, 986 F.3d at 253. A design feature is functional when it "would put competitors at a significant non-reputation-related disadvantage" (*e.g.*, by "improv[ing] cost, quality, or the like"). *PIM Brands Inc. v. Haribo of Am. Inc.*, 81 F.4th 317, 321 (3d Cir. 2023) (citations omitted). "To be functional, . . . trade dress . . . 'need only be useful, not essential.'" *Id*. (quoting *Ezaki*, 986 F.3d at 258). And as the Third Circuit has explained, "[f]unctionality is not a high bar." *Id*.

As an initial matter, the Court notes that the Amended Complaint's references to nonfunctionality are largely conclusory. *See* Am. Compl. ¶ 25 ("The Model 7900 AAV has certain

---

[3] Trade dress's nonfunctionality requirement is critical to "keep[ing] trademark law [of which trade dress is a subset] in its lane." *Ezaki*, 986 F.3d at 256 ("The functionality doctrine keeps trademarks from usurping the place of patents."). Unlike patents, trade dress does not protect "innovative aspects of product design." *Shire US Inc. v. Barr Labs., Inc.*, 329 F.3d 348, 353 (3d Cir. 2003). "If it did, [trade dress protections] could override restrictions on what is patentable and for how long," because trade dress protections "have no time limit." *Ezaki*, 986 F.3d at 256.

distinctive and non-functional design elements which constitute protectable trade dress."); *id.* ¶ 68 ("The overall look and appearance replicated and copied by the Defendant is not necessary to the functioning of the LVAV-2."); *id.* ¶ 75 ("These distinctive features constitute AGF's trade dress and are non-functional."). These allegations alone are not sufficient to state a trade dress claim. *See Santiago*, 629 F.3d at 131; *EBIN N.Y., Inc. v. KISS Nail Prods., Inc.*, No. 23-2369, 2024 WL 1328029, at *6 (D.N.J. Mar. 28, 2024) ("Plaintiff's Complaint is entirely devoid of any non-conclusory, well-pled, factual allegations that EBIN's alleged trade dress is nonfunctional."); *Eliya, Inc. v. Kohl's Corp.*, No. 15-2123, 2016 WL 929266, at *7 (E.D.N.Y. Feb. 22, 2016) ("Plaintiff's conclusory assertions regarding non-functionality are devoid of sufficient factual allegations to satisfy *Iqbal* and *Twombly*."), *report and recommendation adopted*, No. 15-2123, 2016 WL 929321 (E.D.N.Y. Mar. 9, 2016); *Interlink Prods. Int'l, Inc. v. HDS Trading Corp., Inc.*, No. 15-1642, 2015 WL 12840378, at *4 (D.N.J. Oct. 14, 2015) (dismissing trade dress claim on a Rule 12(b)(6) motion in part because "Plaintiff merely allege[d] that its 'trade dress [was] . . . non-functional'").

Moreover, Core & Main correctly notes that the materials "attached to" the Amended Complaint further undermine AGF's argument that it has plausibly alleged nonfunctionality.[4] *Huertas v. Galaxy Asset Mgmt.*, 641 F.3d 28, 32 (3d Cir. 2011). For example, AGF alleges that its trade dress consists of the "shap[e] of [the Model 7900 AAV's] "individual parts," including its "[c]onical[-]shap[ed]" air vent on the top of the product. Am. Compl. ¶ 26; ECF No. 55-2 at 2. But the Model 7900 AAV's "data sheet" states that the air vent's "[c]onical shape maximizes clearance and protects the venting valve from contamination." ECF No. 55-2 at 2. Similarly, with

---

[4] When "design choices . . . serve discrete functions," courts evaluate trade dress functionality element-by-element. *PIM*, 81 F.4th at 321 ("[W]e analyze functionality 'at the level of the particular design chosen for feature(s).'" (citation omitted)).

11

respect to the overall shape of the product, the '344 Patent—which the Model 7900 AAV embodies—states that the conical-shaped air vent is generally placed atop the "main body portion" of the product "to direct air to [the] air release valve." ECF No. 55-1 at 14 ("It is generally configured such that the angled port . . . extends vertically from the main body portion of the valve assembly . . . to direct air to [the] air release valve . . . positioned vertically above the main body portion of the valve assembly . . . ."); *see id.* figs. 1, 4. Moreover, the '344 Patent states that many of the Model 7900 AAV's parts are made of bronze or brass because bronze provides for "increased durability" and brass "is useful in some commercial sprinkler systems." *Id.* at 15. Additionally, the '344 Patent makes clear that the size of the Model 7900 AAV reflects the needs of the "overall [fire sprinkler] system." *Id.* at 16. And finally, according to the '344 Patent, the Model 7900 AAV's "valves" have "red handles" because "powder coated *safety* red . . . facilitates corrosion resistance and easy visibility."[5] *Id.* at 15 (emphasis added). Thus, the elements of the Model 7900 AAV's alleged trade dress are "useful . . . beyond branding" and are therefore not protectable. *PIM*, 81 F.4th at 321; *see Ezaki*, 986 F.3d at 259 ("Pocky was born when Ezaki Glico found that it could coat just part of a cookie stick, leaving people an uncoated place to hold it. So it designed Pocky's handle to be useful."); *Azurous, Inc. v. Kennedy Int'l, Inc.*, No. 23-4770, 2024 WL 3219663, at *9–10 (D.N.J. June 28, 2024) (dismissing a trade dress claim on a Rule 12(b)(6)

---

[5] The fact that the '344 Patent notes that corrosion resistance or easy visibility can be achieved by using "another color" (*i.e.,* a color other than safety red) does not render the Model 7900 AAV's "red handled valves" non-functional. ECF No. 55-1 at 15. As the Third Circuit explained in *Keene Corp. v. Paraflex Industries*, a design is not non-functional "merely because there are [alternative] designs 'which defendant could use and still produce a workable' product." 653 F.2d 822, 827 (3d Cir. 1981) (citation omitted). Thus, because AGF's choice of safety red "offer[s]" *some* "edge in usefulness" relative to other choices by way of enhanced visibility, it is functional. *Ezaki*, 986 F.3d at 258, 260; *see also PIM*, 81 F.4th at 321 (explaining that to be functional, a design feature need not be essential); *ERBE Electromedizin GmbH v. Canady Tech. LLC*, 529 F. Supp. 2d 577, 601–02 (W.D. Pa. 2007), *aff'd sub nom. ERBE Elektromedizin GmbH v. Canady Tech. LLC*, 629 F.3d 1278 (Fed. Cir. 2010).

motion where "the Complaint and supporting documents indicate[d] that" the elements of plaintiff's alleged trade dress were "useful").

### B. AGF's Lanham Act Unfair Competition Claim

The Parties agree that AGF's "[Lanham Act] unfair competition claim . . . rises and falls with [its] trade dress claim." Opp'n Br. at 10; *see* Moving Br. at 13 ("Plaintiff's [Lanham Act] unfair competition claim fails for the same reasons as set forth above with respect to AGF's trade dress claim."); *see also Vision Sports, Inc. v. Melville Corp.*, 888 F.2d 609, 613 (9th Cir. 1989) ("A seller's adoption of a trade dress confusingly similar to a competitor's constitutes unfair competition that is actionable under section 43(a) of the Lanham Act."); *HDOS Franchise Brands, LLC v. El Paso Hot Dog, LLC*, No. 21-201, 2021 WL 5629923, at *5 (S.D. Cal. June 29, 2021) ("The elements for unfair competition and trade dress infringement under the Lanham Act require essentially the same showing."); *YETI Coolers, LLC v. JDS Indus., Inc.*, 300 F. Supp. 3d 899, 907 (W.D. Tex. 2018) (similar). Because the Court finds that AGF has failed to plead "imitation of a *non-functional* feature, or combination of features, of [its] product, packaging, or design," it finds that AGF has failed to plead a Lanham Act unfair competition claim. *Ebeling & Reuss, Ltd. v. Swarovski Int'l Trading Corp., A.G.*, No. 88-4878, 1992 WL 211554, at *11 (E.D. Pa. Aug. 24, 1992) (emphasis added).

### C. AGF's State Law Unfair Competition Claim

The Parties also agree that AGF's Pennsylvania "law unfair competition claim rises and falls with [its] trade dress claims," with one minor exception. Opp'n Br. at 10; Moving Br. at 14 ("AGF's Pennsylvania common law claim also fails for the same reasons its Lanham Act claims fail."). According to Core & Main, AGF's unfair competition claim under state law also requires allegations that "Defendant conducted [some] acts in Pennsylvania." Reply Br. at 9. However, since the Court finds that AGF has failed to state a plausible claim for both trade dress infringement

13

and unfair competition under the Lanham Act, it finds that AGF's state law unfair competition claim similarly fails. *See Checker CAB Phila., Inc. v. Uber Techs., Inc.*, No. 14-7265, 2016 WL 950934, at *4 n.4 (E.D. Pa. Mar. 7, 2016) ("[A]n unfair competition claim under Pennsylvania common law is the equivalent of a federal Lanham Act claim."), *aff'd*, 689 F. App'x 707 (3d Cir. 2017). As such, the Court need not reach the issue of whether AGF has plausibly alleged (or needs to allege) that Core & Main conducts business in Pennsylvania.

## IV.  CONCLUSION

Accordingly, for the reasons stated above, **IT IS** on this 30th day of January 2026;

**ORDERED** that Core & Main's motion to dismiss (ECF No. 67) Counts II, III, and IV of the Amended Complaint (ECF No. 55) is **GRANTED**; and it is further

**ORDERED** that Counts II (Trade Dress Infringement, 15 U.S.C. § 1125), III (Unfair Competition, 15 U.S.C. § 1125), and IV (Unfair Competition, Pennsylvania Common Law) of the Amended Complaint (ECF No. 55) are **DISMISSED WITHOUT PREJUDICE**; and it is finally

**ORDERED** that AGF shall have sixty (60) days from entry of this Opinion and Order to submit a Second Amended Complaint that addresses the deficiencies identified in this Opinion and Order. Insofar as AGF submits a Second Amended Complaint, it shall also provide a form of the Second Amended Complaint that indicates in what respect it differs from the Amended Complaint, by bracketing or striking through materials to be deleted and underlining materials to be added. *See* L. Civ. R. 15(a)(2).

**SO ORDERED.**

                                           */s/ Claire C. Cecchi*
                                          **CLAIRE C. CECCHI, U.S.D.J.**